**In re USN COMMUNICATIONS, INC., et al., Debtors.**

**Scott Peltz, as Liquidating Trustee for the USN Communications Liquidating Trust, Plaintiff,**

**v.**

**Com Services, Inc., Defendant.**

**Bankruptcy Nos. 99–383 to 99–395(PJW).**
**Adversary No. 00–1882.**

United States Bankruptcy Court, D. Delaware.

Jan. 17, 2003.

Ian Connor Bifferato, Megan N. Harper, Bifferato, Bifferato & Gentilotti, Wilmington, DE, Thomas Pietrantonio, Thomas Pietrantonio, P.C., Port Washington, NY, for Defendant.

Mark Minuti, Tara L. Lattomus, Saul Ewing, LLP, Wilmington, DE, David B. Goroff, Frank W. DiCastri, Foley & Lardner, Chicago, IL, for Scott Peltz, as Trustee of the USN Communications, Inc. Liquidating Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Chief Judge.

This opinion relates to Defendant's Motion to Vacate Default Judgment (Doc. # 8). Defendant seeks relief for the default under Federal Rule of Civil Procedure 60(b), which is made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 9024.[1] For the reasons set forth below, the Court will deny Defendant's motion to vacate the default judgment, but will grant leave to reconsider.

## BACKGROUND

On February 18, 1999, USN Communications, Inc. and certain of its subsidiaries filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The First Amended Joint Consolidation Plan of Reorganization of USN Communications, Inc. et al., approved on March 15, 2000, created the

USN Communications Liquidating Trust. Mr. Scott Peltz was appointed Trustee (the "Trustee") and granted the exclusive power to prosecute all avoidance and preference actions.

Defendant was incorporated on August 4, 1997 and was a New York Corporation with its principal place of business in Port Washington, New York. Defendant provided the following address on its Certificate of Incorporation for accepting service of process: Com Services, Inc., c/o The Corporation Company, Registered Agent, 74 Highland Avenue, Port Washington, N.Y. 11050. In March 1999, after its only client filed for bankruptcy protection, Defendant ceased operations.

On December 15, 2000, the Trustee filed its complaint to recover avoidable transfers. In the complaint, the Trustee alleged that Defendant received $113,274.75 during the 90–day preference period and that these payments were subject to avoidance under Bankruptcy Code § 547(b). The Trustee sent a copy of the complaint and summons to Defendant at the registered address by first-class United States mail on December 22, 2000. Defendant was required to respond by January 15, 2001. On March 22, 2001, after Defendant failed to respond, the Trustee filed its motion for default judgment (Doc. # 5). The Court granted the motion and entered a default judgment on April 12, 2001 (Doc. # 6).

Subsequently, the Trustee discovered that Mr. Matthew Bonfitto was the former president and one of several former shareholders of Defendant. The Trustee informed Mr. Bonfitto of the default judgment by letter dated May 29, 2001. Mr. Bonfitto did not receive the summons and

---

1. The Court will cite to the federal rules of procedure as either "Civil Procedure Rule ___" or "Bankruptcy Rule ___".

complaint or any other notice of the adversary proceeding prior to May 29, 2001. Defendant's registered address was a personal residence used by Mr. Bonfitto until he moved on February 17, 1998. Mr. Bonfitto claims his negligence in failing to keep the New York Department of State apprised of his address was based on improper advice from Defendant's incorporating attorney.

Immediately following receipt of the May 29, 2001 letter, Mr. Bonfitto's attorney attempted to negotiate an agreement with the Trustee where the Trustee would voluntarily vacate the default judgment. These negotiations were unsuccessful. There was no further communication between the parties and in the fall of 2001, the Trustee sought to domesticate the default judgment in New York. The Trustee filed a motion for summary judgment in lieu of complaint with the Supreme Court of New York for Nassau County. The New York court granted the motion and entered a default judgment for $113,274.75 together with interest. On March 21, 2002, Mr. Bonfitto's attorney filed the motion here to vacate default judgment.

## DISCUSSION

■ The issue is whether Defendant has provided sufficient grounds to justify vacating the default judgment. Generally, the courts of the Third Circuit have disfa-

vored default judgments and have held that any doubt as to whether a default judgment should be vacated must be resolved in favor of the setting aside the default and reaching a decision on the merits. *See Zawadski de Bueno v. Bueno Castro,* 822 F.2d 416, 420 (3d Cir.1987); *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 194–95 (3d Cir.1984); *Gross v. Stereo Component Sys., Inc.,* 700 F.2d 120, 122 (3d Cir.1983); *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir.1951).

■ According to Civil Procedure Rule 55(c), a bankruptcy court may set aside the entry of a default "for good cause shown."[2] If a judgment by default has been entered by the court, it may be set aside in accordance with Civil Procedure Rule 60(b).[3] Civil Procedure Rule 60(b) controls in cases where both an entry of default and a default judgment exist. *See Massaro v. Massaro (In re Massaro),* 235 B.R. 757, 761 (Bankr.D.N.J.1999). A motion to vacate a default judgment based on excusable neglect must be filed within one year of the date the default was entered. Civil Procedure Rule 60(b).

■ In deciding a motion to vacate a default judgment, the Third Circuit has stated that lower courts must consider the following factors: (1) whether the plaintiff will be prejudiced if the judgment is vacat-

2. Fed. R. Bankr.P. 7055 makes Fed.R.Civ.P. 55 applicable to adversary proceedings under the Bankruptcy Code. Fed.R.Civ.P. 55 states in relevant part:

   (c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

3. Fed. R. Bankr.P. 9024 makes certain sections of Fed.R.Civ.P. 60 applicable to cases under the Bankruptcy Code. Fed.R.Civ.P. 60 states in relevant part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relive a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (mistake, inadvertence, surprise, or excusable neglect;...The motion shall be made within a reasonable time, and for reasons (1) ...not more than one year after the judgment, order, or proceeding was entered or taken.)

ed; (2) whether the defendant has a meritorious defense to the underlying action; and (3) whether the default was the result of the defendant's culpable conduct. *See $55,518.05 in U.S. Currency,* 728 F.2d at 195; *Gross,* 700 F.2d at 122. These standards apply regardless of whether the motion to vacate is brought under Civil Procedure Rule 55(c) or Rule 60(b). *See $55,518.05 in U.S. Currency,* 728 F.2d at 195.

■ The Third Circuit has determined that the second factor, whether the defendant has a meritorious defense, is the threshold question for this analysis. *Id.* A meritorious defense "is the critical issue because without a meritorious defense [defendant] could not win at trial...[and] there would be no point in setting aside the default judgment...if [defendant] could not demonstrate the possibility of his winning." *Id.* In order to show that a meritorious defense exists, a defendant must allege specific facts that, if established at trial, would constitute a complete defense. *Id.* A meritorious defense cannot be shown by "conclusionary language" or "verbatim excerption[s] of the statutory language". *Id.* at 196.

The first and third factors articulated in *$55,518.05 in U.S. Currency* are similar to the excusable neglect requirement developed by the United States Supreme Court in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership et al.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer,* the Supreme Court concluded that the determination of whether excusable neglect existed was an equitable decision to be made after "taking account of all relevant circumstances surrounding the party's omission." *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489. In determining the existence of excusable neglect, courts are to address: (1) whether there is a danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See id.*

*I. Meritorious Defense*

■ Defendant has not adequately demonstrated to this Court that a meritorious defense exists. Under Bankruptcy Code § 547(g), a defendant has the burden of proving the nonavoidability of a transfer. Specific facts must be pleaded in order to vacate a default judgment under Civil Procedure Rule 60(b). *See $55,518.05 in U.S. Currency,* 728 F.2d at 195. In short, Defendant's proposed answer must show that there is an inference of a meritorious defense.

Defendant alleges four affirmative defenses in its proposed answer to the Trustee's complaint. *See* Doc. 8, Ex. D. The Court will only address the first three defenses as the fourth defense merely reserves any other defense. First, Defendant alleges that the transfers cannot be avoided because "the transfers made to Defendant were a substantially contemporaneous exchange for new value in accordance with 11 U.S.C. § 547(c)(1)." Second, Defendant claims that the transfers cannot be avoided because they were based on "obligations incurred and made in the ordinary course of business between Plaintiff and Defendant and were made according to ordinary course of business terms, all in accordance with 11 U.S.C. § 547(c)(2)." Finally, Defendant states that the transfers cannot be avoided because "subsequent to the transfers, Defendant may have given new value to or for the benefit of the Plaintiff in accordance with 11 U.S.C. § 547(c)(4)."

Unfortunately, Defendant's statements do not rise to the level of specificity re-

quired for vacating a default judgment. The defenses do not contain any factual support and are merely statements of the statutory provisions. While the Court has discretion to vacate a default judgment, it cannot set aside the judgment based on conclusory statements or a recitation of the relevant statutory language.

## II. Excusable Neglect

■ Although Defendant's failure to plead specific facts relating to a meritorious defense is determinative, the Court will, nonetheless, continue with an analysis of excusable neglect. Looking at the *Pioneer* factors, I find that excusable neglect does exist with regard to Defendant's delay in filing its motion. The Court will address each of the four elements below.

### A. Danger of Prejudice to the Debtor

■ The Court has determined that the overall danger to the Trustee is low. In *Feliciano v. Reliant Tooling Co.*, the Third Circuit stated that "the cost of enforcing a judgment later vacated and the delay in realizing satisfaction on a claim 'rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment.'" *See Feliciano*, 691 F.2d 653, 656–57 (3d Cir.1982). In order to show prejudice their must be a loss of evidence, the increased potential for collusion or a substantial reliance on the judgment. *See Manus v. NRG Energy, Inc. (In re O'Brien Environmental Energy, Inc.)*, 188 F.3d 116, 127 (3d Cir.1999). The loss of an advantageous position cannot be used to establish prejudice. *See Pratt v. Philbrook*, 109 F.3d 18, 22 (1st Cir.1997).

Courts have noted that the unavailability of witnesses or other impediments to discovery might be sufficient to show prejudice. *See Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 993

(E.D.N.Y.1995). However, the Trustee has not shown that he would be materially prejudiced if the default judgment is vacated. The Trustee states that he will be prejudiced because of the "time and money [spent] perfecting and recording the Default Judgment in the state of New York." Doc. # 10 at 7. Additionally, the Trustee points out that local New York counsel was retained in order to file a motion for summary judgment and have the default judgment domesticated in New York.

I find that the Trustee has not demonstrated sufficient prejudice if the default judgment is vacated. The Trustee has expended funds in order to enforce his default judgment and any decision to vacate will certainly delay satisfaction of the Trustee's claim. The Trustee has not shown that this delay will result in discovery difficulties or the loss of evidence. The loss of an advantageous position and costs of enforcing a judgment are insufficient "to prevent the opening of a default judgment." *See Manus*, 188 F.3d at 127.

### B. The Length of the Delay

■ Motions filed under Civil Procedure Rule 60(b)(1) are subject to a one year filing period. This one year period is an "outer limit" after which a court loses the power to entertain the motion. *See Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 656 (2d Cir.1979); *Defeo v. Allstate Ins. Co.*, No. 95–244, 1998 WL 328195, at *5, 1998 U.S. Dist. LEXIS 9060, at *17–18 (E.D. Pa. June 19, 1998). A motion filed under Civil Procedure Rule 60(b) is not considered timely just because it is filed within the one-year time limit. *Defeo*, 1998 WL 328195, at *5, 1998 U.S. Dist. LEXIS 9060, at *17–18. The motion must be filed within a reasonable time. Fed.R.Civ.P. 60(b). As the delay in filing the motion to vacate approaches this one-

year time limit, a court should impose a proportional increase in the burden or proof required to show that reasonable delay existed. *See Amoco,* 605 F.2d at 656.

I believe the delay in Defendant's filing may be a direct result of Defendant's business problems. The events surrounding Defendant's termination of business activities appear to have created some difficulties for the former officers and shareholders. Based on this observation, it seems that Mr. Bonfitto may honestly have had trouble making an informed decision on his options, resulting in the delay in filing Defendant's motion to vacate. The length of the delay in this case is not unreasonable.

*C.  The Reason for the Delay*

Defendant has provided two reasons for the delay in filing its motion to vacate. The first is that it did not receive notice regarding the adversary complaint due to its failure to update the registered agent's mailing address. Second, Defendant states that the delay in filing was occasioned due to difficulty gathering information now located with former corporate officers and shareholders. In *Pioneer,* the Supreme Court rejected the argument that excusable neglect could only result from a string of circumstances that were outside the movant's reasonable control. *See Pioneer,* 507 U.S. at 388, 113 S.Ct. 1489; *Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. PRIDES Litigation),* 235 F.3d 176, 184 (3d Cir.2000); *Manus,* 188 F.3d at 125.

Both of the reasons for delay were within Defendant's reasonable control. Defendant could have filed his motion to vacate as soon as he was notified by the Trustee's May 29, 2001 letter. Mr. Bonfitto could have asked about his duties as the registered agent of the company and the ad-

dress of record could have been updated by Defendant following Mr. Bonfitto's move. However, I cannot reject Defendant's excusable neglect argument for the sole reason that these events were in Defendant's reasonable control, particularly given that Mr. Bonfitto was handling this matter for a significant period of time apparently without the assistance of counsel.

*D.  Good Faith of the Movant*

■ Finally, the Court must consider whether Defendant's failure to file an answer was the result of Defendant's own culpable conduct. Culpable conduct is defined as actions taken willfully or in bad faith. *See Feliciano,* 691 F.2d at 657. Mere negligence does not amount to culpable conduct. *See Hritz v. Woma Corp.,* 732 F.2d 1178, 1183 (3d Cir.1984). The limited information provided by Defendant does not lead one to conclude that any of its actions were done in bad faith. Although his actions may be negligent, it does not appear that Mr. Bonfitto intentionally decided not to provide an updated address to the New York Secretary of State. In addition, Defendant's delay in filing its motion to vacate the default judgment was not the result of its own culpable conduct. As noted above, the events surrounding Defendant's termination of business activities were difficult for all of Defendant's former officers and shareholders. Defendant's delay in filing the motion cannot be traced to any willful or culpable conduct of Defendant.

**CONCLUSION**

Although I find that excusable neglect exists to permit Defendant's filing of its motion to vacate, I will deny the motion because of Defendant's failure to plead a meritorious defense with specificity. In light of my excusable neglect determina-

tion and because the Court prefers to avoid default judgments and dispose of cases on the merits, Defendant will be granted leave to file a motion for reconsideration of this ruling. Defendant must file and serve such a motion within sixty (60) days after the entry of this ruling and the motion must be supported by an affidavit alleging, with specificity, Defendant's alleged meritorious defenses. Absent the filing of such a motion with the affidavit the default judgment will stand.