**In re Raymond L. WOODCOCK, Debtor.**

**Raymond L. Woodcock, Plaintiff,**

**v.**

**United States of America on behalf of its Agency the Department of Education, Defendant.**

Bankruptcy No. 92–14916–DEC.
Adversary Nos. 02–1924–PAC, 02–2039.

United States Bankruptcy Court,
W.D. Missouri.

Oct. 6, 2004.

Raymond L. Woodcock, pro se.

David DeTar Newbert, Kansas City, MO, Elizabeth A. Weishaupl, for Defendant.

## MEMORANDUM OPINION

DENNIS R. DOW, Bankruptcy Judge.

Before the Court is the Motion to Reopen (and related Motion for Summary Judgment) filed by Debtor Raymond L. Woodcock ("Woodcock"), the latest episode in a saga that has lasted for more than a decade regarding the dischargeability of certain student loans taken out by Woodcock to finance his law school education in the 1980s. As detailed below, this litigation ultimately resulted in the entry of final orders determining, under the previous version of 11 U.S.C. § 523(a)(8), that Woodcock's student loans were nondischargeable for the reason that they did not first become due more than seven years prior to the date of the filing of his bankruptcy petition and that repayment of the obligations would not impose an undue hardship. The case was appealed three times to the United States Court of Appeals for the Tenth Circuit and was the subject of two unsuccessful petitions for certiorari to the United States Supreme Court. Now, approximately 10 years after the rendition of the final judgment and order in that adversary proceeding, Woodcock obtained an order reopening his case and seeks relief under Rule 60(b) of the Federal Rules of Civil Procedure incorporated by Rule 9024 of the Federal Rules of Bankruptcy Procedure on various grounds discussed more fully below. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(I), over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure[1]. For the reasons set forth below, I find that Woodcock has failed to establish cause for granting him relief from the final judgments previously entered determining his student loans to be nondischargeable.

## I. FACTUAL BACKGROUND

Woodcock obtained $20,000 in Stafford student loans from Chemical Bank to attend law school at Columbia University. The loans were guaranteed by the New York State Higher Education Services Corporation ("NYSHESC"). There were four loans of $5,000 each, evidenced by four promissory notes executed by Woodcock on September 24, 1979, May 21, 1980, June 16, 1981, and April 7, 1982.

On April 21, 1992, Woodcock filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code in the District of Colorado. In August 1992, Woodcock brought an adversary proceeding seeking to determine the dischargeability of his student loan debts. In January 1993, the United States Bankruptcy Court for the District of Colorado ruled that Woodcock's student loans were not dischargeable under 11 U.S.C. § 523(a)(8). Woodcock filed a motion for reconsideration which was denied. He then appealed to the United States District Court for the District of Colorado. On February 17, 1994, the district court affirmed the bankruptcy court's determination that the student loan debts were nondischargeable. Woodcock then appealed to the Tenth Circuit Court of

---

1. The parties agreed at the status conference that the Motion to Reopen and all other pending motions could be decided on the briefs and that if the Court overruled the Motion to Reopen it would be unnecessary to present new evidence of hardship. The parties also waived oral argument.

Appeals. On January 6, 1995, the Tenth Circuit affirmed the decision of the district court as to the undue hardship determination, but remanded the case to the bankruptcy court for a determination of whether the NYSHESC had suspended the debtor's repayment period, thus affecting discharge under 11 U.S.C. § 523(a)(8)(A). Woodcock then filed a petition for certiorari with the U.S. Supreme Court as to the undue hardship determination. On October 2, 1995, the Supreme Court denied his petition.

On May 17, 1995, Woodcock file a motion in the bankruptcy court for summary judgment as to the suspension issue. The bankruptcy court granted Woodcock's summary judgment motion in part, holding that his fourth loan was made in an amount which exceeded the maximum loan amount and was therefore subject to discharge. The bankruptcy court otherwise denied Woodcock's motion, holding that there were applicable suspensions of repayment on his first three loans so that they did not become due more than seven years pre-petition, and excepted the loans from discharge. Woodcock appealed to the district court again. The district court denied his motion for a change of venue and dismissed the appeal for failure to prosecute. Woodcock appealed this decision to the Tenth Circuit Court of Appeals, which reversed and remanded based on the failure of the district court to state the reasons for dismissal. On September 18, 1997, on remand, the district court affirmed the order of the bankruptcy court denying discharge on the three remaining student loans. Woodcock appealed this decision to the Tenth Circuit and that court, on June 22, 1998, affirmed. Woodcock filed another petition for certiorari,

and on January 11, 1999, the Supreme Court denied the petition.

Woodcock did not make payments on his student loan obligations to NYSHEC, and it filed a claim for assignment with the U.S. Department of Education. On June 13, 2001 and July 26, 2001, Woodcock's student loans were assigned to the U.S. Department of Education.

On April 27, 2001, Woodcock filed a motion to reopen the adversary proceeding. On April 5, 2002, he filed a Motion to Discharge Debts to Specific Parties. Since it was now the holder of the student loans, the U.S. Department of Education moved to be substituted as the defendant in the adversary proceeding. On May 20, 2002, the U.S. Bankruptcy Court for the District of Colorado held a hearing on the motions. In a September 18, 2002 order, the bankruptcy court reopened the adversary proceeding, substituted the Department of Education as the defendant and granted Woodcock's motion to transfer venue to the U.S. Bankruptcy Court for the Western District of Missouri. The Colorado bankruptcy court did not however address Woodcock's motion seeking relief from the final order determining that his three student loans were nondischargeable, leaving that motion for this Court to determine.

After transfer of the case, on February 27, 2003, the Department of Education filed a motion to dismiss the reopened adversary proceeding, arguing that principles of res judicata required dismissal[2]. On June 12, 2003, this Court issued an amended order to show cause why the case should not be dismissed for lack of subject

**2.** As the 8th Circuit B.A.P. noted, the Department presumably seeks to have Woodcock's Motion to Reopen denied rather than the adversary proceeding dismissed. Accordingly, this Court treats that pleading not as a request to dismiss, but as an opposition to Woodcock's Motion to Reopen and Motion for Summary Judgment.

matter jurisdiction[3]. On July 7, 2003, Woodcock filed a response.

On July 28, 2003, this Court entered an order of dismissal, finding that Woodcock's response did not adequately address the jurisdictional question. On August 4, 2003, Woodcock filed a motion to alter or amend the judgment, and requested that the Court allow him to pursue an independent action or seek relief under Rule 60(b). On August 13, 2003, this Court held that it had no jurisdiction and denied Woodcock's motion. Woodcock appealed this Court's July 28 and August 13, 2003 orders to the U.S. Bankruptcy Appellate Panel for the Eighth Circuit. On November 20, 2003, the Eighth Circuit B.A.P. determined that this Court does in fact have jurisdiction over the adversary proceeding and all pending motions, and reversed the order of dismissal. Accordingly, this Court will decide all pending motions in this adversary which are: the Motion to Discharge Debts as to Specific Parties; Motion for Determination of Dischargeability; Motion for Reconsideration of Order of Substitution; Motion for Sanctions; Motion for Summary Judgment; Motion to Strike Motion for Summary Judgment; and the Motion to Reopen. All of the motions except for the Motion to Reopen (and Motion for Summary Judgment) are dealt with in orders issued simultaneously with this Memorandum Opinion.

This opinion examines the motion filed by Woodcock on April 23, 2001, in the U.S. Bankruptcy Court for the District of Colorado entitled "Motion to Reopen." (hereinafter referred to as the "Motion to Reopen"). In the Motion to Reopen, Woodcock requested that his case be reopened pursuant to 11 U.S.C. § 350, which the U.S. Bankruptcy Court of the District of Colorado did. The Motion to Reopen also seeks relief from the final orders determining that the three student loans were nondischargeable pursuant to Rule 9024 and Rule 60(b)(3), (5), and (6). This issue remains pending and is presently before this Court.

## II.   DISCUSSION AND ANALYSIS

Woodcock seeks relief from the final orders finding his student loans were nondischargeable pursuant to Rule 60(b) on the following grounds: (1) Woodcock's income has been low to nonexistent since one year after the 1992 dischargeability trial causing an undue hardship on him to make the monthly student loan payment that the U.S. Bankruptcy Court for the District of Colorado determined he would be able to make; (2) discharge was denied in part on the basis of a material misrepresentation by NYSHESC as to the total amount due to it on the loans and the amount now sought to be collected by the lender is greatly in excess of the amount that the U.S. Bankruptcy Court for the District of Colorado considered in determining that it was not an undue hardship for Woodcock to repay the loans; (3) the U.S. Bankruptcy Court for the District of Colorado failed to consider and reached no findings on certain of Woodcock's evidence regarding deferments of his student loans, and discharge was denied on the grounds of seven years passage based on the court's determination that deferments tolled the time; and (4) a recent bill received by Woodcock from the lender provides significant new evidence on relevant points not considered by the Colorado court, including that the lender has violated federal default-prevention laws and sent Woodcock false, confusing, or misleading

---

**3.**   After transfer to the Western District of Missouri, this case was initially before the Honorable Arthur Federman. On November 24, 2003, the Honorable Dennis R Dow was assigned to this case.

information on matters pertaining to deferments. *See* Motion to Reopen, pp. 1–2.

Rule 9024 of the Federal Rules of Bankruptcy Procedure provides that Fed. R.Civ.P. 60(b) applies under the Bankruptcy Code, with certain specified limitations.[4] Rule 60(b) provides, in relevant part:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation....

Fed.R.Civ.P. 60(b).

### A. Relief Under Rule 60(b)(3)

■ Woodcock argues in the Motion to Reopen and the briefs accompanying the Motion to Reopen[5] that he should be relieved from the final orders denying dischargeability of his student loans pursuant to Rule 60(b)(3), which provides that a court may grant relief from a final judgment or order due to fraud, misrepresentation, or other misconduct of an adverse party. In support of this argument, Woodcock asserts that: NYSHESC fraudulently delayed maturity of the loans; NYSHESC concealed a policy manual which contains provisions regarding deferment of loans; NYSHESC deliberately deceived the court regarding Woodcock's credit reports, its default proceedings, its internal policies regarding deferments, and its dependence upon Woodcock's requests for deferments; NYSHESC's made misrepresentations to the court regarding deferment; and NYSHESC engaged in misconduct for failure to disclose or produce its Common Manual during discovery. *See* Brief in Support of Motion to Reopen (filed June 12, 2002), pp. 13–20.

However, Woodcock's motion under Rule 60(b)(3) is untimely pursuant to Rule 60(b), which specifically provides that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken." Fed.R.Civ.P. 60(b). The Order on his Motion for Summary Judgment was entered by the Colorado bankruptcy court on February 9, 1996. The Colorado District Court entered its Order affirming the

---

4. Rule 9024 provides: "Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330."

5. Woodcock filed two separate briefs in support of the Motion to Reopen. The first brief was attached to the Motion and the second brief was filed June 12, 2002. The cites herein indicate which brief is referred to.

bankruptcy court on September 18, 1997 and the Tenth Circuit entered its Order affirming the district court on June 22, 1998. The Supreme Court denied his petition for certiorari on January 11, 1999, which is the latest that the judgments and orders which Woodcock seeks relief from became final. Woodcock filed the Motion to Reopen on April 27, 2001, more than two years later and clearly outside the one-year limitation for seeking relief under Rule 60(b)(3).

Woodcock argues that the one-year limitation does not apply to his motion under the provisions of Rule 9024, a proposition for which he cites no authority other than Rule 9024. According to that rule, the time limitations of Rule 60(b) apply to cases under the Code except that they are not applied to a motion to reopen a case or in certain other contexts not relevant here. *See* Fed. R. Bankr.P. 9024. However, just because Woodcock included a request under § 350 that the adversary proceeding be reopened and entitled his pleading "Motion to Reopen," does not mean that his separate and distinct request for relief pursuant to Rule 60(b) is not subject to time limitations. *Id.* Indeed, the Motion to Reopen specifically seeks two separate forms of relief: (1) the reopening of the adversary proceeding pursuant to § 350 and (2) relief under Rule 9024 and Rule 60(b). *See* Motion to Reopen, p. 1; Brief in Support of Motion to Reopen (filed June 12, 2002), p. 2. The U.S. Bankruptcy Court for the District of Colorado already reopened this adversary proceeding in order for Woodcock to proceed with his Rule

60(b) motion, and that request was not controlled by a one-year time limitation.[6] However, the pending issue before this Court is Woodcock's request under Rule 60(b) which seeks relief from the final judgment denying dischargeability of his student loans. Clearly, the relief Woodcock seeks pursuant to Rule 60(b)(3) is controlled, and time-barred, by the applicable one-year time limitation. *See, e.g., Missoula Federal Credit Union v. Reinertson*, 241 B.R. 451, 456 (9th Cir. BAP 1999) (finding debtors not entitled to relief under Fed.R.Civ.P. 60(b) because motion filed outside one-year limitations period); *In re International Nutronics, Inc.*, 28 F.3d 965, 968–69 (9th Cir.1994), *cert. denied*, 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 493 (1994) (finding trustee's motion for relief from order due to fraud fell under Fed.R.Civ.P. 60(b)(3) and was subject to one-year limitation period); *Scott v. Scott (In re Scott)*, 185 B.R. 730, 732 (Bankr.S.D.Miss.1995) (motion for relief due to fraud governed by Fed.R.Civ.P. 60(b) one-year limitation and enlargement not permitted).

With regard to the previous court's finding of undue hardship, Woodcock argues that that decision was based upon a misrepresentation by NYSHESC of the amount it sought. Even if that were true, Rule 60(b) clearly states that a request for relief based upon the fact that the judgment was procured by fraud, misrepresentation or other misconduct must be brought within one year of the date of the entry of the order for judgment. Woodcock's request on this basis is clearly un-

---

**6.** In his Motion to Reopen, Woodcock requested that the Court reopen his "case" in a pleading which bears both the bankruptcy number and the adversary number. In its order granting the motion to reopen, the Colorado Bankruptcy Court purported to reopen the adversary proceeding. In its recent opinion, the Bankruptcy Appellate Panel suggests that the reopening of the adversary proceeding was an unnecessary act as adversary proceedings are never closed to begin with. It may or may not be necessary for Woodcock to reopen his underlying bankruptcy case in order to file the motion for relief from judgment at issue. This Court will, nonetheless, treat that as having been done.

timely. Woodcock also argues that he is entitled to relief from the prior judgment or order as a result of new evidence consisting primarily of a new statement sent to him which significantly increases the amount claimed due on the loans and his unearthing of a manual regarding procedures supposedly disregarded by NYSHESC relating to corrections of improperly granted deferments. Whether Woodcock's argument in this regard is that NYSHESC made misrepresentations to the court or concealed evidence or that the new bill and the manual are newly discovered evidence, either contention is barred by the one-year limitation on certain claims under Rule 60(b) and cannot now constitute cause for granting relief from the prior judgment.

B. Relief Under Rule 60(b)(5)

█ Woodcock alternatively seeks relief from the orders denying dischargeability of his student loans pursuant to Rule 60(b)(5) which provides that the court may relieve a party from a final judgment or order when " it is no longer equitable that the judgment should have prospective application." Fed.R.Civ.P. 60(b)(5). He argues that a subsequent change in circumstances justifies modification of the orders denying dischargeability of his student loans. The subsequent changes in circumstances that Woodcock alleges are: that NYSHESC sent him a bill for nearly double the amount of its last previous account statement and in excess of the amount represented during litigation; that NYSHESC had taken steps to transfer its interest in the loans to the Department of Education without notifying Woodcock thus giving him a false impression of NYSHESC's continuing involvement; and that he is unable to pay the amounts still owed on his student loans because con-

trary to what the Colorado bankruptcy court determined, he has been unable to maintain sufficient income generating employment that would enable him to repay the loans and his history shows no prospect in the future of such employment. *See* Brief in Support of Motion to Reopen (attached thereto), pp. 11–14; Brief in Support of Motion to Reopen (filed June 12, 2002), p. 22.

In support of his argument, Woodcock cites cases that he asserts allowed debtors to seek a second determination of the dischargeability of their student loans due to changes in the debtors' circumstances after dischargeability had been previously litigated and denied. However, none of the cited cases purports to grant relief under Rule 60(b), instead granting relief under § 350 or Rule 4007[7] (or its predecessor Rule 409(a)) where an adversary proceeding had not already been filed. Additionally, none of the cases Woodcock cites actually involves a modification of an order entered in a previous adversary proceeding in which the debtor fully litigated the claim of dischargeability and lost. The cases Woodcock cites in support of the relief he requests fall almost exclusively into one of two categories. Neither category of cases supports the request made by Woodcock for relief under the circumstances of this case.

The first are cases in which the court grants a debtor's motion to reopen the underlying bankruptcy case for the purpose of filing, for the first time, a complaint seeking a determination as to the dischargeability of the student loan on undue hardship grounds. For example, in *Fisher v. United States (In re Fisher)*, 223 B.R. 377, 379 (Bankr.M.D.Fla.1998), the court permitted the debtor, due to a

---

**7.** Fed. R. Bankr.P. 4007 provides, "[a] debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt.... A complaint other than under § 523(c) may be filed at anytime."

changed health condition, to file an adversary complaint for the first time under Rule 4007(b). The court specifically noted that the debtor had not had the opportunity to raise the hardship defense nor elaborate on her physical disabilities in any proceeding. *Id.; see also, Craig v. Pennsylvania Higher Educ. Assistance Agency (In re Craig)*, 64 B.R. 854, 855–56 (Bankr. W.D.Pa.1986) (allowing new complaint to determine dischargeability to be filed five years after bankruptcy case closed).

In the second category are those cases in which courts included in their orders a provision permitting (or affirmed lower court orders permitting) a subsequent reevaluation of a debtor's circumstances as part of the resolution of a proceeding in which the dischargeability of a student loan was considered and denied. In those instances, however, in filing a subsequent request for relief, the debtor is merely taking advantage of a specific provision contained in the original order that allowed for reevaluation of the hardship issue should circumstances change. For example, in *Conner v. Illinois State Scholarship Comm'n (In re Conner)*, 89 B.R. 744, 750 & n. 21 (Bankr.N.D.Ill.1988), the court specifically provided in its order denying dischargeability of the debtor's student loan that the debtor could seek another determination of discharge should his situation deteriorate during the repayment period. However, that court required that the modification request be in the form of a new complaint based on changed circumstances. *Id.* at 750. The *Conner* court also provided that the creditor could seek early repayment should a change of circumstances occur that benefits the debtor. *Id.* Similarly, the *Sobh* court also found that the debtor may file a new complaint seeking a redetermination of dischargeability, but that any new complaint must necessarily be *based on new*

*facts. In re Sobh*, 61 B.R. 576, 578 (E.D.Mich.1986) (emphasis added).

In *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir.1981), the Eight Circuit stated that the bankruptcy court could deny discharge of the debtor's student loans without prejudice to the debtor's again seeking relief. Although the Eight Circuit suggested that the lower court might include such a provision in its order, the Colorado court that adjudicated dischargeability in this case did not do so. Additionally, the fact that the Eighth Circuit recommended that the lower court include a provision to the effect that its finding was without prejudice suggests that, had it not done so, the result might be otherwise. Likewise, the court in *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 397 (2nd Cir.1987) noted that the district court's order denying discharge of the debtor's student loans was "without prejudice to [debtor] seeking relief pursuant to R.Bankr.P. 4007(a), (b)." *See also, e.g., Pierre v. New York State Higher Educ. Services Corp. (In re Pierre)*, 12 B.R. 693, 695 (Bankr.S.D.Fla.1981) (court specifically provided in its order denying discharge that such order was without prejudice to the debtor seeking relief pursuant to Rule 409(a)(1)); *In re Roberson*, 999 F.2d 1132, 1138 (7th Cir.1993) (order denying discharge specifically provided debtor could obtain reconsideration if circumstances changed). In the case at hand, the Colorado bankruptcy court did not provide in its order denying dischargeability of Woodcock's loans that it was doing so without prejudice to Woodcock again seeking relief. This case is thus clearly distinguishable from the cases cited by Woodcock for the proposition that an order denying dischargeability of student loans can be reconsidered based only on changed circumstances.

■ As noted above, although Woodcock relies upon Rule 60(b)(5) in requesting relief, none of the cases cited by him cites or relies upon that rule, but are predicated either upon § 350(b) or Rule 4007 or its predecessor. In this Court's view, § 350(b) is inapplicable to the relief Woodcock requests. That section relates to reopening the underlying bankruptcy case and not to a request to vacate or modify a judgment entered in a separate adversary proceeding which was fully and finally litigated. The rule governing requests for relief from a judgment or order is Rule 60(b). Even some courts relying solely upon § 350, however, have denied relief based only upon an alleged change in circumstances. For example, in *In re Kapsin,* 265 B.R. 778 (Bankr.N.D.Ohio 2001), the court denied a debtor's request to reopen the case to file an original complaint to determine dischargeability based on changed circumstances from the date of the filing of the petition. *Id.* In that case, the debtor had not even filed a complaint and litigated the issues, but the court determined that

> if a change in circumstances were, standing alone, sufficient to reopen a case for the sole purpose of discharging a student loan obligation, then any debtor who filed for bankruptcy relief could at any time-say even ten or twenty years later–invoke the jurisdiction of this Court for solely that purpose. This of course would create the anomalous situation of a perpetual Chapter 7 case. . . .

*Kapsin,* 265 B.R. at 781. That court went on to state that

> under § 523(b), a debtor in a subsequent bankruptcy may bring an action to determine the dischargeability of a student loan debt, notwithstanding the fact that either no action was brought in the prior bankruptcy to determine the dischargeability of the student loan debt, or that in the previous bankruptcy a specific finding was made as to the nondischargeability of the debtor's student loan obligation.

*Id.* The weight of the finality concern is even more significant in the case at hand in which Woodcock had previously filed a complaint and fully litigated the issue, including having resorted to appellate review on multiple occasions.

■ A strong showing is required before any judgment will be modified. *See, e.g., Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 383–85, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (holding modification of consent decree not warranted in all circumstances and that movant may not rely on events that were actually anticipated at time of decree). The factual question regarding dischargeability of student loans is whether there is hardship at the time of discharge, and the court must make its determination in light of the debtor's actual circumstances at the relevant time. *See Bender v. Educational Credit Management Corp. (In re Bender),* 368 F.3d 846, 848 (8th Cir.2004). The factors a court looks at at the time of determining dischargeability of a debtor's student loans include the debtor's past, present, and reasonably reliable future financial resources. *In re Long,* 322 F.3d 549, 553 (8th Cir. 2003); *Educational Credit Management Corp. v. Polleys (In re Polleys),* 356 F.3d 1302, 1308 (10th Cir.2004). The Colorado bankruptcy court and district court did in fact look at Woodcock's circumstances at the time of the dischargeability proceeding and also took into account his ability to obtain and retain employment, his potential to be employed and his future income capacity. *See In re Woodcock,* 149 B.R. 957, 962 (Bankr.D.Col.1993); *aff'd,* No. 93–M–705 (D. Col. filed Feb. 17, 1994); *aff'd in part,* 45 F.3d 363 (10th Cir.1995), *cert.*

*denied,* 516 U.S. 828, 116 S.Ct. 97, 133 L.Ed.2d 52 (1995). Thus, the appropriate inquiry was performed at the relevant time, and allowing Woodcock to submit evidence of changed circumstances in the same fully litigated adversary proceeding would indeed create the situation of a perpetual Chapter 7 case. Woodcock has not submitted any evidence of a change in circumstances that was not considered by the Colorado bankruptcy court such as disability or illness. His change in circumstances argument hinges on his inability to increase his income and pay his student loans which was taken into account at the time of the nondischargeability determination. *Id.*

Many of the cases Woodcock cites require the request for relief to be in the form of a new complaint. The court in *Kapsin* required that the debtor file a new bankruptcy petition, as well as a new complaint initiating an adversary proceeding, in order to obtain another determination of the dischargeability of his student loan. 265 B.R. at 781. This Court need not decide whether Woodcock must file a new complaint or a new bankruptcy case as well, but solely whether Rule 60(b)(5) authorizes the relief which Woodcock seeks. That rule does not provide that relief from a previous judgment or order may be obtained merely as a result of a change of circumstances, nor should it. Permitting the prior litigated judgment or order to be so freely vacated or modified strikes this Court as presenting serious problems. In addition to giving insufficient weight to the principle of finality, it would permit the courts to disrupt final judgments under circumstances that lack principled limits. For example, what kinds of changes in circumstances warrant vacating or modifying the prior judgment? How often can a debtor seek such relief? Is the right to seek to modify or reopen the judgment bilateral, such that the affected creditor may also seek relief in the event that the debtor's situation improves? Unless some sort of principled limits are placed upon this process, it is not difficult to envision a situation in which multiple succeeding motions are filed by different parties seeking modification of the order and the indebtedness is alternatively declared dischargeable and nondischargeable, with no end to the process.

Woodcock suggests that this result is appropriate because the bankruptcy court is required to engage in some difficult prognostication with respect to the debtor's future employment prospects. While this is true, it does not demonstrate that all subsequent changes in circumstances require the court to entertain requests for modification. As noted above, the Eighth Circuit has said in *Bender* that the determination of dischargeability is best made at or near the time of discharge. *See* 368 F.3d at 848. In addition, in this Circuit, the court is required to look not only to the debtor's current financial circumstances, but also to his or her earning potential and likely future income. *Long,* 322 F.3d at 553. There is no point in having the court consider factors such as the debtor's age, education, employment experience, earning history and prospects if the court can simply revisit the issue if the future does not comport with its conclusions. The Code calls upon the bankruptcy court to do the best it can with the information that it has available to it at the time of determination of dischargeability and to engage in an analysis which is not just static, but forward looking. It becomes meaningless if it can be subjected to multiple periodic re-review without limit.

If there is some power to modify the final order in the previously litigated dischargeability proceeding, it resides in Rule 60(b) and this Court does not believe that Woodcock has met the standard set forth

in that rule for relief from the prior judgment in this case. Rule 60(b)(5) requires that the Court find it is no longer equitable that the judgment should have prospective application. None of the points asserted by Woodcock convince this Court that he has demonstrated that enforcement of the previous judgment would no longer be equitable. Many of Woodcock's arguments are simply reiterations of points that were fully litigated previously. For example, the first 12 pages of Woodcock's brief are nothing more than a series of complaints that the bankruptcy and appellate courts either ignored or failed to perceive the significance of certain of his evidence or simply wrongly decided his case as a matter of law or policy. The Tenth Circuit specifically disposed of these contentions in its first opinion. *In re Woodcock,* 45 F.3d 363 (10th Cir.1995). To the extent these arguments were actually litigated in the previous case, the doctrine of collateral estoppel clearly bars their re-litigation here. To the extent the arguments could have been made in the prior case, they are, as urged by the Department, barred by the doctrine of res judicata. Clearly, none of these complaints are appropriate grounds for relief from judgment or order under any subsection of Rule 60(b).

Other points involve developments that were clearly foreseeable, such as the accrual of additional interest. It should not come as a surprise that if no payments are made on a promissory note for more than a decade, the balance will have increased. To the extent that the balance of the claim may have changed because the Department is now asserting the right to collect fees which it previously indicated to the court that it would waive, the more appropriate solution to the problem is not to reopen the case so that the hardship involved in paying the increased amount of the claim may now be determined, but

rather to bind the Department to its prior waiver of those fees.

■ Woodcock argues further that he has not in fact earned what the bankruptcy court suggested he might. The mere fact that plaintiff's earning history does not comport with the court's judgment about his potential does not make a case for relief from judgment or order under any of the subdivisions of Rule 60(b). It clearly cannot constitute grounds for determining that prospective application of the judgment is inequitable given the fact that the principal reason for the disparity, according to Woodcock's own admission, is his decision to pursue lower paying career choices. *See* Brief in Support of Motion to Reopen (attached thereto), pp. 16–18. Woodcock's voluntary decision to be and remain essentially underemployed does not constitute cause for relief from the prior judgment or order determining that repayment of the debt would not constitute an undue hardship. *Cf., In re Gerhardt,* 348 F.3d 89, 93 (5th Cir.2003) (citing *In re Grigas,* 252 B.R. 866, 875 (Bankr.D.N.H. 2000)) (concluding debtor could not claim undue hardship where financial distress was self-imposed by choosing low paying job when qualified for higher paying jobs); *In re Healey,* 161 B.R. 389, 394–95 (E.D.Mich.1993) ("A resolute determination to work in one's field of dreams, no matter how little it pays, cannot be the fundamental standard from which 'undue hardship' under § 523(a)(8)(B) is measured"); *cf. also, In re Ford,* 151 B.R. 135, 139–40 (Bankr.M.D.Tenn.1993) (denying undue hardship discharge because debtor voluntarily placed limitations on her availability for work).

As noted, Woodcock certainly has other remedies available should he wish to have the undue hardship of his student loans redetermined, such as filing a new complaint as part of a new bankruptcy case.

Thus, weighing the equities of granting the debtor a fresh start and the need for finality, this Court finds that the changed circumstances asserted by Woodcock do not outweigh the need for finality in student loan adversary proceedings, nor do the asserted changed circumstances cause enforcement of the previous judgment to no longer be equitable. *See, e.g., In re Kapsin*, 265 B.R. at 780–82; Fed.R.Civ.P. 60(b)(5).

### C. Relief Under Rule 60(b)(6)

▮▮▮▮ Rule 60(b)(6) permits a court to grant relief from a final judgment or order for "any other reason justifying relief from the operation of the judgment." Fed. R.Civ.P. 60(b)(6). Relief under Rule 60(b)(6) is an extraordinary remedy. *See In re Thermadyne Holdings Corp.*, 283 B.R. 749 (8th Cir. BAP 2002) (citing *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir.1999)) (quoting *Nucor Corp. v. Nebraska Public Power Dist.*, 999 F.2d 372, 374 (8th Cir.1993)). Rule 60(b)(6) does not give courts unlimited authority to fashion relief as they deem appropriate. *Doe v. Zimmerman (In re Zimmerman)*, 869 F.2d 1126, 1128 (8th Cir.1989). It is not a substitute for other legal remedies. *Id.* Relief under Rule 60(b)(6) will be granted only where the movant has shown exceptional circumstances. *Hepper v. Adams County*, 133 F.3d 1094, 1096 (8th Cir.1998). Rule 60(b)(6) is reserved for extraordinary cases to prevent manifest injustice. *See United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049–50 (9th Cir.), *cert. denied*, 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 29 (1993). Such relief is to be granted only when exceptional circumstances prevented the moving party from seeking redress through the usual channels. *See Ackermann v. United States*, 340 U.S. 193, 199–202, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Relief is appropriate when circumstances are so "unusual or compelling" that extraordinary relief is

warranted, or when it "offends justice" to deny such relief. *See Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996) (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 (10th Cir.1990)).

Woodcock questions the "extraordinary circumstances" requirement and argues that it does not apply in this context. He reasons that the courts have applied this test to prevent litigants from circumventing the time limitations on requests under other subparts of Rule 60(b), but because Rule 9024 supposedly makes those limits inapplicable in bankruptcy, this Court need not employ that standard. There are two problems with Woodcock's argument. First, this Court is bound by the decisions of the Eighth Circuit which has determined that relief under Rule 60(b)(6) should only be granted in extraordinary circumstances. *See In re Thermadyne Holdings Corp.*, 283 B.R. 749; *Watkins v. Lundell*, 169 F.3d at 544; *Nucor Corp.*, 999 F.2d at 374. Second, as discussed above, the relief Woodcock seeks pursuant to Rule 60(b)(3) is in fact controlled, and time-barred, by the applicable one-year time limitation. *See, e.g., In re Reinertson*, 241 B.R. at 456; *In re International Nutronics, Inc.*, 28 F.3d at 968–69; *Scott*, 185 B.R. at 732.

▮▮▮▮ Many of the other points cited by Woodcock represent nothing more than an attempt to cast as "extraordinary" or "exceptional", situations which would fall squarely within one of the other grounds for relief delineated by Rule 60(b). As such, they represent an effort by Woodcock to circumvent the limitations that apply to such requests, which this Court will not permit. The provisions of Rule 60(b) are mutually exclusive. Thus, if the provisions of paragraphs (3) or (5) are applicable, the extraordinary relief provision of paragraph (6) may not be invoked. *See*

*Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863 & n. 11, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); *In re Norris,* 228 B.R. 27 (Bankr.M.D.Fla.1998); *see also, In re Reinertson,* 241 B.R. 451, 456 (9th Cir. BAP 1999) (holding Rule 60(b)(6) is unavailable when one of the preceding five subsections applies).

■ In this case, many of the assertions that Woodcock makes as justifying relief from the orders denying dischargeability of his student loans have to do with alleged fraud on the court by the lender. Because these points are encompassed and time-barred by Rule 60(b)(3), Rule 60(b)(6) may not be invoked. Woodcock's remaining points are encompassed in Rule 60(b)(5) and the Court has discussed above why relief should not be granted under that section. For the reasons noted above, the Court does not believe that Woodcock's other assertions rise to the level of "unusual or compelling" circumstances.

■ Finally, Woodcock argues that somehow a change in the law regarding the grounds for dischargeability of student loans entitles him to relief from the prior judgment. Woodcock's argument is unpersuasive for two reasons. First, as he himself concedes, that change in the law is not applicable to his case. *See* Brief in Support of Motion to Reopen (filed June 12, 2002), p. 2, n. 1. Second, the change in the law is not favorable to him, but rather deletes one of the previously available grounds for obtaining a discharge of student loans. Woodcock's argument that the Court should somehow now view undue hardship in a different way as a result of the amendment to the statute deleting the provision on the seven-year period is speculative and unpersuasive.

### III. CONCLUSION

For all the reasons described above, this Court finds that the relief sought by Woodcock pursuant to Fed.R.Civ.P. 60(b)(3) is time-barred. The Court also finds that Woodcock does not qualify for relief pursuant to Fed.R.Civ.P. 60(b)(5) or (6). Therefore, Woodcock's request for relief from the final orders denying dischargeability of his student loans pursuant to Fed.R.Civ.P. 60(b)(3), (5), and (6) is hereby denied. Further, Woodcock's Motion for Summary Judgment is also denied.